No. 22-35076
_____
_____

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

_____

TERRY EUGENE IVERSEN,

    Petitioner-Appellant,

        v.

DAVE PEDRO,

    Respondent-Appellee.


_____


APPELLEE'S BRIEF
_____

Appeal from the United States District Court
for the District of Oregon
_____

ELLEN F. ROSENBLUM
Attorney General
BENJAMIN GUTMAN
Solicitor General
ROLF C. MOAN
Senior Assistant Attorney General
1162 Court St. NE
Salem, Oregon 97301-4096
Telephone: (503) 378-4402
rolf.moan@doj.state.or.us

Attorneys for Appellee

_____
_____

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ...................................................1

STATEMENT OF ISSUE PRESENTED...........................................1

STATEMENT OF THE CASE ........................................................1

SUMMARY OF ARGUMENT .........................................................1

ARGUMENT ................................................................................3

    I.    Petitioner's argument that Oregon state courts acted contrary to and unreasonably applied clearly established federal law provides no basis for reversal.........................................3

        A.    In rejecting petitioner's Eighth Amendment challenge, the state courts applied the Eighth Amendment's "gross disproportionality" standard to petitioner's particular conduct and history of recidivism. .......................5

        B.    The record showed that petitioner committed his most recent felony by victimizing a young woman to satisfy his own sexual desire, that he has a long history of similar crimes, and that prior prison terms and treatment opportunities did not prevent him from re-offending. ...........................................................10

            1.    Petitioner committed his most recent felony by masturbating behind a woman who was traveling alone, frightening her in the process. ........10

            2.    The record showed that petitioner already had a long history of victimizing others to satisfy his sexual impulses.........................................10

                a.    Petitioner had previously committed four felony "sex crimes," including the rape and sodomy of underage girls. .......................10

                b.    The record documented other acts that petitioner committed to gratify his own sexual desire. .................................13

3.    The record showed that petitioner's prior sentences failed to deter him from committing new crimes to satisfy his sexual desires. .................. 16

    a.    Despite previously serving significant prison terms, petitioner continued to commit new crimes, including new felony sex crimes............................................. 16

    b.    Petitioner repeatedly failed, beginning in 1986, to take advantage of treatment opportunities.................................................. 18

C.    The state court decisions were not "contrary to" clearly established federal law announced by Supreme Court holdings..................................................... 20

1.    The state courts did not apply a rule that contradicts any clearly established rule announced by the Supreme Court. ........................... 22

    a.    No clearly established federal law prohibited the state courts from considering petitioner's criminal history when comparing the gravity of his crime to the severity of his sentence. ....................... 23

    b.    Clearly established federal law did not require the state courts to conduct intra or inter-jurisdictional comparisons..................... 27

    c.    The state courts did not "ignore" Supreme Court precedents distinguishing true-life sentences from lesser sentences. ...... 30

2.    Petitioner mistakenly claims that the facts in his case are "materially indistinguishable" from the facts in *Solem v. Helm*. .............................................. 32

D.    The state courts also did not unreasonably apply clearly established federal law............................................. 33

II.     Nothing in pages 18-42 of petitioner's brief identifies a basis
        for reversal or relief under § 2254(d)..............................................40

CONCLUSION..................................................................................................42

## TABLE OF AUTHORITIES

### Cases Cited

*Early v. Packer*,
        537 U.S. 3 (2002) .......................................................................................21

*Ewing v. California*,
        538 U.S. 11 (2003) ......................................................... 7, 8, 9, 24, 25, 30

*Gonzalez v. Duncan*,
        551 F.3d 875 (9th Cir. 2008).......................................... 25, 26, 36, 38, 39

*Graham v. Florida*,
        560 U.S. 48 (2010) ................................................................ 8, 25, 28, 29

*Harmelin v. Michigan*,
        501 U.S. 957 (1991) ..................................................... 7, 24, 25, 28, 29, 30

*Harrington v. Richter*,
        562 U.S. 86 (2011) ............................................................. 22, 27, 33, 34

*Knowles v. Mirzayance*,
        556 U.S. 111 (2009) ................................................................................34

*Lockyer v. Andrade*,
        538 U.S. 63 (2003) ............................................... 8, 22, 28, 31, 34, 35, 36

*Marks v. United States*,
        430 U.S. 188 (1977) ...................................................................................7

*Nichols v. United States*,
        511 U.S. 738 (1994) ......................................................................... 13, 41

*Ramirez v. Castro*,
        365 F.3d 755 (9th Cir. 2004).................................................. 26, 36, 37, 39

*Robinson v. Ignacio*,
        360 F.3d 1044 (9th Cir. 2004)....................................................................7

*Solem v. Helm*,
        463 U.S. 277 (1983) ............................................................ 24, 29, 32, 33

iii

*State v. Althouse*,
   359 Or. 668, 375 P.3d 475 (2016) ................................................ 6, 7, 8, 9

*Williams v. Taylor*,
   529 U.S. 362 (2000) .................................................... 21, 22, 34

*Woodford v. Visciotti*,
   537 U.S. 19 (2002) .......................................................... 21, 33

*Woods v. Donald*,
   575 U.S. 312 (2015) ................................................................ 21

## Constitutional and Statutory Provisions

28 U.S.C. § 2254 ................................................................................. 2

28 U.S.C. § 2254 (d)(1) ............................................. 4, 7, 8, 22, 28, 40

28 U.S.C. § 2254(a) ............................................................................ 4

28 U.S.C. § 2254(d) ........................................................ 4, 22, 33, 40

Or. Rev. Stat. § 137.719 .................................... 1, 3, 8, 24, 29, 33, 39

Or. Rev. Stat. § 137.719(1) ......................................................... 6, 11

Or. Rev. Stat. § 137.719(4) .............................................................. 11

Or. Rev. Stat. § 163.465(1) ................................................................ 5

Or. Rev. Stat. § 163.465(2) .......................................................... 6, 12

Or. Rev. Stat. § 163A.005 ......................................................... 4, 11, 12

Or. Rev. Stat. § 163A.005(4)(a) ...................................................... 11

Or. Rev. Stat. § 163A.005(5)(a) ...................................................... 12

Or. Rev. Stat. § 163A.005(b) ...................................................... 11, 12

Or. Rev. Stat. § 163A.005(t) ....................................................... 11, 12

Or. Rev. Stat. §§ 163.355 to 163.445 ........................................... 6, 12

U.S. Const., Amend. VIII . 1, 2, 4, 5, 6, 7, 8, 9, 13, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 34, 35, 36, 37, 39, 40, 41

# APPELLEE'S BRIEF
_____

## JURISDICTIONAL STATEMENT

Respondent Sue Washburn ("respondent") accepts petitioner's statement of jurisdiction.

## STATEMENT OF ISSUE PRESENTED

Oregon state courts rejected petitioner's claim that his "true life" sentence violates the Eighth Amendment to the United States Constitution. Has petitioner shown that the state court decisions were "contrary to," or "an unreasonable application" of, "clearly established Federal Law" as announced by Supreme Court holdings?

## STATEMENT OF THE CASE

Respondent accepts petitioner's statement of the case.

## SUMMARY OF ARGUMENT

Petitioner pleaded guilty in Oregon circuit court to public indecency, based on evidence that he seated himself behind a young woman on a light-rail train and masturbated, causing her to be "frozen in fear." Due to petitioner's prior convictions, his crime qualified as a felony "sex crime" under Oregon law. And because defendant had previously sentenced for four other felony "sex crimes"—including the third-degree rape of a 15-year-old and the second-degree sodomy of a 12-year old—Or. Rev. Stat. § 137.719 prescribed a

presumptive prison sentence of life without parole.  Although defendant argued that applying that sentence to him would violate the Eighth Amendment, the sentencing court rejected the argument and imposed a true-life sentence, and the Oregon Court of Appeals affirmed.

Petitioner argues that he is entitled to habeas relief under 28 U.S.C. § 2254 because the state court rulings were "contrary to," and were unreasonable applications of, clearly established federal law as announced by Supreme Court holdings.  The district court correctly rejected that argument.  The state courts correctly recognized and applied the only "clearly established" legal principle that applies in this context—the principle that the Eighth Amendment prohibits sentences that are "grossly disproportionate" to the conduct at issue.  In petitioner's case, the record at sentencing showed that he had a long history of victimizing minors and young women to satisfy his own sexual desires.  The record also showed that despite serving multiple significant prison terms and receiving treatment opportunities, petitioner continued to commit new felony sex crimes.  Given petitioner's particular criminal conduct and history, he failed to show that his true-life sentence is contrary to, or an unreasonable application of, clearly established federal law as announced by the Supreme Court.

# ARGUMENT

## I.     Petitioner's argument that Oregon state courts acted contrary to and unreasonably applied clearly established federal law provides no basis for reversal.

Petitioner pleaded guilty in Oregon circuit court to the felony "sex crime" of public indecency and, following a sentencing hearing, received the presumptive sentence—"life imprisonment without the possibility of release or parole" ("true life")—that Or. Rev. Stat. § 137.719[1] prescribes for those who

---

[1]     Or. Rev. Stat. § 137.719 provides:

(1) The presumptive sentence for a sex crime that is a felony is life imprisonment without the possibility of release or parole if the defendant has been sentenced for sex crimes that are felonies at least two times prior to the current sentence.

(2) The court may impose a sentence other than the presumptive sentence provided by subsection (1) of this section if the court imposes a departure sentence authorized by the rules of the Oregon Criminal Justice Commission based upon findings of substantial and compelling reasons.

(3) For purposes of this section:

(a) Sentences for two or more convictions that are imposed in the same sentencing proceeding are considered to be one sentence; and

(b) A prior sentence includes:

(A) Sentences imposed before, on or after July 31, 2001; and

(B) Sentences imposed by any other state or federal court for comparable offenses.

*Footnote continued…*

have been convicted of a felony sex crime after having been sentenced for such a crime on at least two prior occasions. (ER-43). Petitioner argued in the state sentencing court, and on direct appeal, that applying the presumptive true-life sentence to him would violate the Eighth Amendment, but the state courts rejected that argument. (ER 191, 206, 240, 322).

Petitioner clams that his sentence entitles him to relief under 28 U.S.C. § 2254(a), which permits a person who is in custody due to a state court judgment to apply for a writ of habeas corpus if "he is in custody in violation of the Constitution or laws or treaties of the United States." Yet 28 U.S.C. § 2254(d)(1) precludes relief. Under 28 U.S.C. § 2254(d), habeas relief

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254 (d)(1). In pages 42-49 of his brief, petitioner argues that the decisions by the state sentencing court and by the Oregon Court of Appeals were "contrary to[] and an unreasonable application of federal

---

(4) As used in this section, "sex crime" has the meaning given that term in Or. Rev. Stat. 163A.005.

law as determined by the Supreme Court." (Pet. Br. 42). The district court correctly concluded otherwise. (ER 3-12).

### A. In rejecting petitioner's Eighth Amendment challenge, the state courts applied the Eighth Amendment's "gross disproportionality" standard to petitioner's particular conduct and history of recidivism.

In assessing whether the state court decisions were contrary to, or an unreasonable application of, clearly established federal law, it first is important to understand the state courts' decisions. As is recounted below, the sentencing court and the Oregon Court of Appeals applied the pertinent Eighth Amendment standard—which requires an assessment of whether petitioner's sentence was grossly disproportionate to his crime. And in assessing the seriousness of petitioner's crime, those courts permissibly considered evidence documenting (1) the particulars of petitioner's most recent felony, in which he masturbated, while seated behind a young woman, for his own sexual gratification; (2) his long history of victimizing others (including raping a 15-year-old girl and sodomizing a 12-year-old girl) to gratify his own sexual desire; and (3) his failure to be deterred from committing felony sex crimes by prior prison sentences or treatment opportunities.

Petitioner received his true-life sentence after pleading guilty to felony public indecency. *See* Or. Rev. Stat. § 163.465(1) (defining public

indecency as including masturbating, or exposing one's genitals "with the intent of arousing the sexual desire of the person or another person," if the act is performed "in, or in view of, a public place"); Or. Rev. Stat. § 163.465(2) (defining public indecency as a Class C felony "if the person has a prior conviction for public indecency or a crime described in [Or. Rev. Stat. §§] 163.355 to 163.445"). Because petitioner had been sentenced for felony "sex crimes" on two or more prior occasions, as is documented in greater detail below, Or. Rev. Stat. § 137.719(1) prescribed a presumptive true-life sentence.

At sentencing, defendant argued that a true-life sentence would be "unconstitutionally disproportionate * * * as applied to" him and thus would violate the Eighth Amendment. (ER-191). Defendant's sentencing memorandum cited *State v. Althouse*, 359 Or. 668, 375 P.3d 475 (2016) (ER-250), an Oregon Supreme Court decision that correctly describes the Eighth Amendment's "grossly disproportionate" standard. The record thus supports the conclusion that the sentencing court applied that standard when rejecting petitioner's Eighth Amendment argument. The record also shows that the Oregon Court of Appeals, when affirming the sentencing court's judgment, also applied that standard. (*See* ER-240, showing that defendant renewed his Eighth Amendment challenge

to his true-life sentence on direct appeal to the Oregon Court of Appeals; ER-322, Oregon Court of Appeals judgment reading "**AFFIRMED.** *State v. Althouse*, 359 Or. 668, 375 P.3d 475 (2016)").[2]

 *Althouse*, 359 Or. at 692, quoted the statement in Justice O'Connor's plurality opinion in *Ewing v. California*, 538 U.S. 11 (2003), that the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing,* 538 U.S. at 23[3] (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment)). As the Supreme

---

[2]  In determining whether § 2254(d)(1) precludes relief, federal courts reviews the "last reasoned decision" by a state court that addressed the issue. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). In the district court, petitioner argued that the pertinent state court decision was the sentencing court's decision. (ER 7, 33). In this court, petitioner argues that both the sentencing court decision and the Oregon Court of Appeals' decision were contrary to, and reflect an unreasonable application of, clearly established federal law. (Pet. Br. 42, 43). Respondent believes that both decisions can be described as "reasoned" decisions but that it makes no practical difference which decision this court addresses. The record before the sentencing court and the Oregon Court of Appeals was the same, and both courts applied the general Eighth Amendment "gross disproportionality" standard that the Oregon Supreme Court correctly described in its *Althouse* decision.

[3]  Because Justice O'Connor's plurality opinion represented the narrowest ground on which the *Ewing* decision rests, her opinion qualified as the controlling opinion. *See Marks v. United States*, 430 U.S. 188, 193 (1977) (explaining which opinion controls when no single opinion commands a majority).

Court has explained, "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application' of framework [under § 2254(d)(1)] is the gross disproportionality principle, the precise contours of which are unclear." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). The Court has explained that our "cases exhibit a lack of clarity regarding what factors may indicate gross disproportionality" and that "in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow." *Id.* at 72. *Althouse*—the case cited in the state court litigation—thus correctly identified "gross disproportionality" as the crucial principle found in the Supreme Court's Eighth Amendment jurisprudence.

In addition, *Althouse* correctly noted that "[t]o determine whether a sentence is grossly disproportionate to a crime [under the Eighth Amendment], the inquiry starts 'by comparing the gravity of the offense and the severity of the sentence.'" *Althouse*, 359 Or. at 692, quoting *Graham v. Florida*, 560 U.S. 48, 60 (2010). And *Althouse* correctly noted, while discussing Or. Rev. Stat. § 137.719 and citing *Ewing*, 538 U.S. at 17-20, that "determining the 'gravity' of a given offense in the context of a sentence imposed under a recidivist statute includes

consideration of the defendant's criminal history." *Althouse*, 359 Or. at 693; *see Ewing*, 538 U.S. at 25, 28 (noting that "[r]ecidivism has long been recognized as a legitimate basis for increased punishment" and that the "gravity" of Ewing's offense under California's "three strikes" law "was not merely 'shoplifting three golf clubs'"—his most recent offense—but doing so "after previously having been convicted of at least two 'violent' or 'serious' felonies").

The sentencing court rejected petitioner's Eighth Amendment arguments at the end of the sentencing hearing. The court first noted that it had "look[ed] at this case, all the facts," which—as recounted below—included information describing petitioner's most recent public indecency crime. (ER-203). The court also found that petitioner's "criminal history is horrendous, absolutely horrendous" and includes "violent offenses." (ER 204-05). The court described petitioner as "very dangerous," "whether it be just another public indecency or something further than that." (ER-205). Although petitioner had been "given so many opportunities . . . to reform," the court found that his history showed that "you're released out in the community, you re-offend again, and you're off . . . to prison" again. (ER-204). "All we can do is incarcerate because that's the only thing that works from preventing you

to offend again." (ER-206). The record, as described below, supported

each of those findings.

> **B.   The record showed that petitioner committed his most recent felony by victimizing a young woman to satisfy his own sexual desire, that he has a long history of similar crimes, and that prior prison terms and treatment opportunities did not prevent him from re-offending.**

> > **1.   Petitioner committed his most recent felony by masturbating behind a woman who was traveling alone, frightening her in the process.**

The sentencing court learned that petitioner committed his most

recent crime—the felony public indecency crime that he committed in

2016 (ER-74)—by targeting a 23-year-old woman who was sitting alone

on a "MAX" light-rail train in Portland, Oregon; defendant sat behind her

and masturbated with his penis exposed to view.  (ER-91).  The victim

reported that when petitioner began masturbating "she could hear it" and

was "frozen in fear."  (ER-150).  She wrote that "I do not want anyone

else to experience the fear, humiliation and repulsion that I had to

experience" and that "[t]o this day I'm still w[]ary of riding the MAX."

(ER 155-56).

> > **2.   The record showed that petitioner already had a long history of victimizing others to satisfy his sexual impulses.**

> > > **a.   Petitioner had previously committed four felony "sex crimes," including the rape and sodomy of underage girls.**

Because petitioner had been sentenced for felony "sex crimes" on at least two prior occasions, his most recent public indecency crime triggered Or. Rev. Stat. § 137.719(1)'s presumptive true-life sentence. The sentencing court learned that petitioner had previously committed a felony sex crime on at least four occasions. Moreover, it learned that petitioner, in committing those crimes (and as was true of his most recent public indecency crime), victimized young females to gratify his own sexual impulses.

Petitioner was convicted in 1989 of two felony sex crimes—third-degree rape and second-degree sodomy. (ER 96-97). *See* Or. Rev. Stat. 137.719(4) (giving "sex crime" the "meaning given that term in [Or. Rev. Stat. §] 163A.005"); Or. Rev. Stat. § 163A.005(4)(a), (b), (t) (defining "sex crime" as including "[r]ape in any degree"' and "[s]odomy in any degree").

Petitioner committed the third-degree rape by having sexual intercourse with a 15-year-old girl. (ER 105, 111). She told police that "he wouldn't take no for an answer and that he was sexually aggressive." (ER 111-12).

Petitioner committed the second-degree sodomy against a 12-year-old neighbor girl who "had been apparently abandoned by her mother."

(ER 105-06, 111-12). Petitioner "tried to get her to give him oral sex" and, when she said "no," "forced himself on her." (ER-106).

In 2000, petitioner was convicted of two counts of public indecency. Because petitioner had already been convicted of rape, sodomy, and—in 1985 and 1997—of public indecency (ER-96, ER-62), each of the 2000 convictions qualified as a felony "sex crime" conviction. (*See* ER-54, Judgment from 2000 describing the crimes as felonies); Or. Rev. Stat. § 163.465(2) (defining public indecency as a Class C felony "if the person has a prior conviction for public indecency or a crime described in [Or. Rev. Stat. §§] 163.355 to 163.445. For essentially those same reasons, petitioner's 2000 public-indecency crimes also qualified as "sex crimes." *See* Or. Rev. Stat. § 137.719(4) (giving "sex crime" the "meaning given that term in [Or. Rev. Stat. §] 163A.005"); Or. Rev. Stat. § 163A.005(5)(a), (b), (t) (defining "sex crime" as including "[r]ape in any degree," "[s]odomy in any degree," and public indecency "if the person has a prior conviction for a crime listed in this subsection").

The victims of both 2000 public indecency crimes were teenage girls. In one case, petitioner masturbated on a MAX train in view of a

17-year-old who was riding the train by herself. (ER-137). When the victim exited the train, petitioner followed her. (ER-137).

In the second case, petitioner masturbated "next to" two teenage girls—aged 16 and 17—on a MAX train. (ER 137-38).

Petitioner's prior felony sex crimes reflect that his most recent felony is part of his long history of victimizing young females to satisfy his own sexual desire.

> ### b.    The record documented other acts that petitioner committed to gratify his own sexual desire.

The sentencing court received information showing that petitioner, in addition to being convicted of the four felony "sex crimes" described above, repeatedly engaged in other misconduct in order to satisfy his sexual desire, although that conduct did not result in additional felony sex-crime convictions.

Although the sentencing court did not explicitly refer to those additional incidents when rejecting petitioner's constitutional arguments (ER 203-06), information about those incidents was properly before it and provided further—albeit unnecessary—support for the conclusion that a true-life sentence, as applied to petitioner, would comply with the Eighth Amendment. *See Nichols v. United States*, 511 U.S. 738, 747 (1994) ("[s]entencing courts have not only taken into consideration a

defendant's prior conviction, but have also considered a defendant's past criminal behavior, even if no conviction resulted from that behavior," and "[w]e have * * * upheld the constitutionality of considering such previous conduct").

Petitioner's first public indecency conviction, a 1985 misdemeanor conviction, was based on evidence that he masturbated outside a grocery store while watching a woman exit the store and approach her car. (ER-103).

In 1988, petitioner was again charged with public indecency, this time for masturbating outside a 7-11 in the presence of three female high school students. (ER 106, 108-12). Petitioner admitted the alleged act but the charge was dismissed as part of negotiations that resulted in his convictions for third-degree rape and second-degree sodomy. (ER-106).

Police also discovered evidence that petitioner had raped a woman in her home near a golf course in 1988. (ER 108). The victim saw the perpetrator run toward the golf course after forcibly raping her, and at "about that same time the grounds keeper at the golf course was confronted by a subject who threatened him with a knife." (ER-109). When presented with a "six picture photo laydown," the grounds keeper "made a very powerful instant positive" identification of petitioner. (ER-

109). Petitioner subsequently showed police "a fort that was in the woods near the golf course," while claiming that "he thought the suspect * * * might be hiding in that little fort." (ER-115). It does not appear that the state ultimately charged petitioner with the rape, although its investigation into petitioner's conduct ultimately resulted in the convictions for third-degree rape and second-degree sodomy that involved other victims. (ER-115).

In addition, an acquaintance of petitioner's accused him of raping her in her home in 1996. She told police that petitioner "grabbed her by the hair, yanked her into the bedroom" and raped her. (ER 116, 120). A medical exam did not show bruising or obvious evidence of violence and the state ultimately did not charge petitioner. (ER 121-22, 116). The police officer who investigated the case, however, testified at sentencing that he had found the woman's account "more plausible" than petitioner's denials, that she cried and "seemed sincere" when reporting petitioner's conduct, and that petitioner had taken a polygraph but "failed completely." (ER 123-24).

Petitioner also committed public indecency in 1996 by masturbating, while his penis was visible to others, in his car in a McDonald's parking lot while a woman was in the next car. (ER-128).

Petitioner's conduct resulted in a 1997 conviction for misdemeanor public indecency. (ER-62).

In 1998, petitioner was observed masturbating in his car at a shopping mall, and he received a six-month jail sentence as a result. (ER-130).

Finally, about a month before petitioner committed the felony public indecency for which he was most recently convicted, he masturbated on a MAX train while seated behind a woman. (ER-103, 148). The woman "could hear him masturbating" but was "too scared to turn around." (ER-154). Because "there wasn't concrete evidence that [petitioner's] penis was exposed," the state did not charge petitioner. (ER-103).

      **3.**    **The record showed that petitioner's prior sentences failed to deter him from committing new crimes to satisfy his sexual desires.**

          **a.**    **Despite previously serving significant prison terms, petitioner continued to commit new crimes, including new felony sex crimes.**

Despite lengthy prison sentences, petitioner repeatedly committed new crimes to gratify his own sexual impulses.

Petitioner was still serving his sentence for his 1985 public indecency conviction when he "escaped from [a] restitution center" and committed a number of new crimes. (ER 96-97). As petitioner notes (Pet. Br. 7), he was subsequently convicted of attempt to elude, reckless driving, and attempted escape and sentenced to probation. (ER 96, 99).

Following petitioner's 1989 convictions for third-degree rape and second-degree sodomy, he was sentenced to 10 years' imprisonment. (ER-99). He was released on post-prison supervision in 1995 but was arrested for a number of new crimes in 1996. (ER-100). He ultimately was convicted of public indecency, unlawful use of a weapon, resisting arrest, and reckless driving and received a 30-month prison sentence. (ER-100).

After completing that prison term, petitioner committed the two felony public indecency crimes that resulted in the 2000 convictions described already. (ER-101). Petitioner received a 36-month prison term. (ER-101).

Petitioner was released from prison in 2002, but in November 2003 committed second-degree assault and received a 145-month prison term. (ER 101-02).

He was released from prison yet again on June 15, 2016, but—less than four months later, and while still on post-prison supervision (ER-85)—committed his most recent felony public indecency.  (ER 104, 74).

The sentencing court thus learned that petitioner had previously served a significant prison term for his first two felony sex crimes (the rape and sodomy crimes), a significant prison term for assault, and a significant prison term imposed in 2000 for his third and fourth felony sex crimes (public indecency).  Nonetheless, none of those prison terms deterred petitioner from committing future felony sex crimes.

### b.     Petitioner repeatedly failed, beginning in 1986, to take advantage of treatment opportunities.

Finally, the sentencing court learned that petitioner received repeated opportunities to receive mental health treatment but consistently failed to take advantage of those opportunities.

At sentencing, a parole and probation officer summarized petitioner's treatment history by stating that petitioner "indicated on several occasions that he wanted to get treatment in the community, but every time" he received a treatment referral, petitioner "always seemed to have a reason why he would not commit to treatment."  (ER-174).

In 1986, a psychologist diagnosed petitioner with "sociopath tendencies," concluded that petitioner "was amenable to treatment," and

expressed a willingness to treat him.  (ER 160-61).  Petitioner, however, "didn't follow through with that treatment" and was "terminated" from treatment in November 1986.  (ER-161).

In 1990, a psychologist described petitioner as suffering from "poor impulse control" and "exhibitionism," while describing exhibitionism as "extremely difficult to treat" and as something that "often leads to more intrusive forms of sexual misconduct."  (ER 161-62).  The psychologist concluded that petitioner "suffered from a severe psychological disorder which made him a risk to the community."  (ER-162).  The same psychologist subsequently assessed petitioner when petitioner was in prison and "thought that [petitioner] was treatable in the prison setting" through the prison's sex-offender treatment program. (ER-163).  Nonetheless, petitioner "never chose to make himself available for those treatments."  (ER-163).

Following petitioner's 1995 release, a psychologist concluded that petitioner "manifests some signs of dangerousness to be at large" and suffered from "exhibitionism, pedophilia, hyper-sexuality," "sexual impulse control disorder," and a personality disorder.  (ER-163).  At that time, however, petitioner "made excuses why he couldn't participate in treatment."  (ER-163).

In 1996, petitioner entered treatment with a mental health professional, but that person "terminated [petitioner] because he was not cooperating with treatment." (ER-164).

While in the community in 1997, petitioner was treated by a Dr. Conn, who "specialized in treatment of sex offenders, and specifically people convicted of public indecency," but petitioner "lied to [Dr. Conn] a lot during his treatment period" and "did not practice" the methods that the doctor had taught him to avoid reoffending. (ER 164-65).

In sum, the record showed that petitioner repeatedly received treatment opportunities but consistently failed to take advantage of them.

### C. The state court decisions were not "contrary to" clearly established federal law announced by Supreme Court holdings.

Petitioner's brief asserts that "[t]he state court decisions were both contrary to, and an unreasonable application of, federal constitutional law on the Eighth Amendment as determined by the Supreme Court's opinions." (Pet. Br. 42). Yet the arguments beneath that heading fail to identify a basis for reversal or relief. First, as recounted below, petitioner fails to show that the state court decisions were "contrary to" clearly established federal law as announced by the Supreme Court.

"AEDPA's requirements reflect a 'presumption that state courts know and follow the law.'" *Woods v. Donald*, 575 U.S. 312, 316 (2015), quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). It thus is a habeas petitioner's burden to show that a state court's reasoning or result is "contrary to" clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (avoiding the "pitfall[]" of acting "contrary to" clearly established federal law "does not require citation of our cases—indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them"; emphasis in original).[4]

The Supreme Court has further explained that a state court decision is "contrary to * * * clearly established Federal law" only if "the state court applies a rule that contradicts the governing law set forth in our cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, 529 U.S. 362,

---

[4] To satisfy the "contrary to" standard, a petitioner must show that the state court decision is "mutually opposed" to an established Supreme Court precedent. *Williams*, 529 U.S. at 406. For example, if a state court were to "correctly identif[y]" a particular Supreme Court decision as "the controlling legal authority" but in "applying that framework, rejects the petitioner's claim," the fact that "the federal court considering the prisoner's habeas application might reach a different result" under that same framework will provide no basis for habeas relief. *Id.*

405-06 (2000). Moreover, a principle of federal law is "clearly
established" only if a Supreme Court *holding* has announced that
principle. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011) ("[f]ederal
habeas relief may not be granted for claims subject to § 2254(d) unless it
is shown that the earlier state court's decision 'was contrary to' federal
law then clearly established in the holdings of this Court * * * or that it
'involved an unreasonable application of' such law").

Here, petitioner failed to show that the state court rulings were
"contrary to" clearly established federal law as announced by the
Supreme Court.

**1.     The state courts did not apply a rule that contradicts any
clearly established rule announced by the Supreme
Court.**

The Supreme Court has explained—with respect to Eighth
Amendment challenges to lengthy prison terms—that "the only relevant
clearly established law amenable to the 'contrary to' or 'unreasonable
application' of framework [under § 2254(d)(1)] is the gross
disproportionality principle, the precise contours of which are unclear."
*Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). The Court's "cases exhibit
a lack of clarity regarding what factors may indicate gross
disproportionality" and "in determining whether a particular sentence for

a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow" *Id.* at 72.

In other words, although the general "gross disproportionality" standard is clearly established, Supreme Court holdings do not yet reflect "clearly established" rules for applying that standard. As a result, petitioner's attempt to identify more specific rules—and his attempt to claim that the state courts failed to apply those rules when rejecting his Eighth Amendment challenge—identifies no basis for habeas relief.

And even if Supreme Court holdings did reflect additional "clearly established" rules for applying the gross-disproportionality standard, the particular "rules" that petitioner purports to identify are not among them. Under a heading asserting that the state court decisions were "contrary to" clearly established federal law, petitioner purports to identify three distinct Supreme Court "rules" that, in his view, the state courts failed to follow or apply. (Pet. Br. 42-49). In fact, none of those supposed rules reflects a "clearly established" principle of federal law announced by the Supreme Court.

          a. **No clearly established federal law prohibited the state courts from considering petitioner's criminal history when comparing the gravity of his crime to the severity of his sentence.**

24

Petitioner argues that the state courts violated clearly established federal law by failing to first compare "the crime committed and the sentence imposed," and by "skipping straight to recidivism" to reject his Eighth Amendment claim.  (Pet. Br. 45).

But when a state court applies a recidivist sentencing statute such as Or. Rev. Stat. § 137.719, an assessment of "the crime committed"—and an assessment of the crime's "gravity"—necessarily includes consideration of the prior crimes that triggered the recidivism statute's application to the defendant. Petitioner quotes Justice Kennedy's concurrence in *Harmelin*, 501 U.S. at 1005, as suggesting that courts must first conduct a "threshold comparison of the crime committed and the sentence imposed" to determine if it "leads to an inference of gross disproportionality."  (Pet. Br. 45).  Petitioner suggests that *Solem v. Helm*, 463 U.S. 277 (1983), also shows that the state courts erred by purportedly "skipp[ing] straight to recidivism."  (Pet. Br. 48).  But Justice Kennedy's *Harmelin* concurrence and *Solem v. Helm* both predate *Ewing*, in which the Court explained that the "gravity" of Ewing's offense under California's "three strikes" law "was not merely 'shoplifting three golf clubs'"—his most recent offense—but doing so "after previously having been convicted of at least two 'violent' or 'serious' felonies."  *Ewing*, 538 U.S. at 25, 28.  In any event, neither decision prohibited courts—when applying a

recidivist sentencing statute—from considering a defendant's prior conduct when assessing the gravity of "the crime" being sentenced.

Petitioner cites *Graham*—which was decided after *Ewing*—as well (Pet. Br. 48), but nothing in *Graham* purports to overrule or cast doubt on the portion of *Ewing* quoted in the text above. *Graham* noted that "[t]he controlling opinion in *Harmelin* explained" that "[a] court must begin by comparing the gravity of the offense and the severity of the sentence," but it nowhere declared that a crime's gravity must be assessed—even in recidivism cases—without any consideration of a defendant's prior criminal conduct. *Graham*, 560 U.S. at 60.

Petitioner also cites *Gonzalez v. Duncan*, 551 F.3d 875, 885-86 (9th Cir. 2008), in an attempt to support the assertion that the state courts acted contrary to clearly established law by purportedly "skipp[ing] straight to recidivism without a proportionality analysis of the actual offense conduct." (Pet. Br. 45, 48). But as *Gonzalez* itself observed, Justice O'Connor's *Ewing* opinion— which "represent[ed] the narrowest basis for the Court's" ultimate decision affirming the sentence at issue—"weighed the gravity of the triggering offense against the harshness of the penalty, *factoring in Ewing's 'long history of felony recidivism' in its calculation*." *Gonzalez*, 551 F.3d at 881-82 (emphasis added).

*Gonzalez* thus recognized that courts may appropriately consider an offender's criminal history as *part* of a current crime's gravity when applying a recidivism sentencing statute. *See also Ramirez v. Castro*, 365 F.3d 755, 768 (9th Cir. 2004) (identifying the question as "whether Ramirez's extreme sentence is justified by the gravity of his most recent offense *and* criminal history" and thus reflecting that, in a recidivism case, the gross-disproportionality assessment *includes* an assessment of the petitioner's "criminal history"; emphasis added). *Gonzalez* does not support petitioner's argument.

Moreover, nothing in the record shows that the state courts somehow ignored the facts of petitioner's most recent public indecency crime when assessing petitioner's Eighth Amendment argument. At sentencing, the state presented detailed information about the facts that supported petitioner's guilty plea to public indecency, including a written statement from the victim. (ER-91, 150, 156). Nothing suggests that the sentencing court or the Oregon Court of Appeals ignored that information or deemed it irrelevant.

And although petitioner seems to suggest that Supreme Court holdings required the state courts to *explicitly* discuss the facts of his most recent crime, and to make a record showing that they considered those facts when assessing his Eighth Amendment argument, no such holdings exist. In fact, Supreme

Court case law reflects that even if a state court provides no explanation of its reasoning, federal courts will presum that it appropriately applied the pertinent federal law standard. *See Harrington v. Richter*, 562 U.S. at 98 ("whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning," and "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief").

No clearly established federal law prohibited the state courts from considering petitioner's criminal history and recidivism when comparing the gravity of his most recent crime to the severity of the statutorily prescribed sentence.

> **b.    Clearly established federal law did not require the state courts to conduct intra or inter-jurisdictional comparisons.**

Petitioner argues that the state courts violated clearly established federal law by rejecting his Eighth Amendment challenge without "conduct[ing] an intra- or inter-jurisdictional comparison"—that is, without explicitly comparing petitioner's sentence to sentences imposed for other offenses in Oregon or to similar crimes in other jurisdictions. (Pet. Br. 42).

Again, however, the only legal principles that Supreme Court holdings "clearly establish" with respect to an Eighth Amendment challenge such as petitioner's is that a "grossly disproportionate" sentence may not be imposed. Supreme Court holdings have not "clearly established" that the Eighth Amendment proportionality principle necessarily or always requires intra or interjurisdictional comparisons. *See Andrade*, 538 U.S. at 73, 72 ("the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application' of framework [under § 2254(d)(1)] is the gross disproportionality principle," and the Court's "cases exhibit a lack of clarity regarding what factors may indicate gross disproportionality").

And even if clearly established law sometimes requires such comparisons, they were not required in petitioner's case. As petitioner acknowledges (Pet. Br. 48), Justice Kennedy's concurrence in *Harmelin* explained that intra and inter-jurisdictional comparisons are only pertinent if the record *first* shows that a sentence is grossly disproportionate to "the crime" at issue: "[I]ntrajurisdictional and interjursidictional analyses are appropriate in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring). Petitioner cites *Graham* (Pet. Br. 48), but *Graham* confirms that such comparisons should become part of the

Eighth Amendment analysis only if comparison of "the gravity of the offense and the severity of the sentence" reflects "gross disproportionality." *See Graham*, 560 U.S. at 60 ("'[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions"), quoting *Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring).[5]

Here, however, petitioner did not establish that the "threshold comparison" of his crime to his sentence reflects any "gross disproportionality." The state courts—in assessing the gravity of petitioner's "crime" and comparing it to the severity of his sentence—were entitled to consider the prior felony sex crimes that brought him within Or. Rev. Stat. § 137.719's ambit. *See*

---

[5]     Petitioner also asserts that a failure to perform intra and inter-jurisdictional comparisons is contrary to *Solem v. Helm*. (Pet. Br. 48). *Solem v. Helm*, however, predates *Graham*. In any event, *Solem v. Helm* noted only that "it *may* be helpful to compare the sentences imposed on other criminals in the same jurisdiction," and that "courts *may* find it useful to compare the sentences imposed form commission of the same crime in other jurisdictions." *Helm*, 463 U.S. at 291 (emphasis added). Although *Solem v. Helm* stated that "a court's proportionality analysis under the Eighth Amendment *should be* guided by objective criteria," including intra and inter-jurisdictional comparisons, it did not suggest, much less hold, that such comparisons *always* must be conducted. *Id.* at 292 (emphasis added).

*Ewing*, 538 U.S. at 25, 28 (the "gravity" of Ewing's offense under California's "three strikes" law "was not merely 'shoplifting three golf clubs'"—his most recent offense—but doing so "after previously having been convicted of at least two 'violent' or 'serious' felonies"). Petitioner's prior felony sex crimes, along with his current public indecency crime, reflected a longstanding pattern of victimizing others to satisfy his own sexual desires, and of continuing to do so despite prior incarceration and treatment opportunities.

As a result, the "threshold" comparison of "the crime" to petitioner's sentence did not demonstrate that this is the "rare" case in which a statutorily prescribed sentence is grossly disproportionate. It follows that even if Justice Kennedy's *Harmelin* concurrence reflected "clearly established" federal law, it did not require the state courts to conduct intra or interjurisdictional comparisons before rejecting petitioner's Eighth Amendment challenge. Any "failure" to conduct such comparisons cannot be described as "contrary to" clearly established federal law as announced by the Supreme Court.

### c. The state courts did not "ignore" Supreme Court precedents distinguishing true-life sentences from lesser sentences.

Petitioner claims that the state court decisions were contrary to clearly established federal law because they "did not distinguish the Supreme Court's approach to life without parole as opposed to terms of years" and "ignor[ed] the

Supreme Court precedent regarding the special protections required for imposition of . . . life without parole." (Pet. Br. 42, 43). But for true-life sentences, just as for lesser prison sentences, the pertinent Eighth Amendment principles—that is, the principle clearly established by Supreme Court holdings—is the same: A court must assess whether the sentence imposed is grossly disproportionate. *See Andrade*, 538 U.S. at 73 ("the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the exceedingly rare and extreme case"; internal quote marks omitted). As established already, that is precisely the principle that the state courts applied.

Significantly, the Supreme Court has never held that a statutorily prescribed true-life sentence is unconstitutionally disproportionate in a case like this. In other words, nothing in Supreme Court case law prohibits a sentencing court from imposing a true-life sentence under a recidivist sentencing scheme when an offender's prior convictions include rape and sodomy of underage victims, and when his most recent crime also involved victimizing a young woman in order to gratify his own sexual desires.

Here, too, petitioner fails to identify any clearly established federal law that the state court rulings were "contrary to."

> **2.** **Petitioner mistakenly claims that the facts in his case are "materially indistinguishable" from the facts in *Solem v. Helm*.**

Petitioner asserts that the facts in his case are "materially indistinguishable" from the facts in *Solem v. Helm*. (Pet. Br. 44). He argues that the state courts nonetheless failed to reach the same result reached by the Supreme Court in *Solem v. Helm* and that the state court decisions thus were "contrary to" clearly established federal law. (Pet. Br. 44). In fact, the facts in *Solem v. Helm* are easily distinguished from those in petitioner's case.

In *Solem v. Helm*, the Supreme Court held that imposition of a true-life sentence under a South Dakota recidivism statute violated the Eighth Amendment. *Solem v. Helm*, 463 U.S. at 282, 303. But in reaching that conclusion, the Court emphasized facts that differ dramatically from the facts in petitioner's case. First, the Court described Helm's most recent offense as "one of the most passive felonies a person could commit"—he had "utter[ed] a 'no account' check for $100." *Id.* at 296, 281. Second, although Helm had previously been convicted of six felonies, "they were all nonviolent" and "none was a crime against a person." *Id.* at 280.

The facts here are strikingly different. First, petitioner's most recent offense was neither a "passive" felony nor victimless. Instead, he targeted a woman who was seated by herself on a train, sat behind her, and masturbated in a manner that made her aware of his conduct and caused her to be "frozen in fear." (ER 91, 150).

Second, the prior felony sex crimes that brought petitioner within Or. Rev. Stat. § 137.719's ambit were *all* crimes against a person or persons. Petitioner's prior felony public indecency crimes each victimized at least one other person, just as his rape and sodomy crimes victimized other persons.

The facts of petitioner's case are not "materially indistinguishable" from those in *Solem v. Helm*. The state court decisions were not "contrary to" any clearly established federal law as announced by the Supreme Court.

**D.    The state courts also did not unreasonably apply clearly established federal law.**

The "unreasonable application of" standard is also "difficult to meet," which is how "it was meant to be" under § 2254(d). *Harrington v. Richter*, 562 U.S. at 102. The habeas petitioner bears the "burden to show that the state court applied [Supreme Court case law] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. at 25. He or she must

"show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law [under Supreme Court case law] beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103; *see also id.* at 102 (relief is warranted only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents"). Notably, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410 (emphasis in original). And it "is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).

The Supreme Court's *Andrade* decision supports the conclusion that Oregon state courts reasonably applied the "grossly disproportionate" standard when rejecting petitioner's Eighth Amendment argument, and that petitioner's true-life sentence is constitutional. *Andrade* held that the California Court of Appeal did not unreasonably apply (or act contrary to) clearly established law by affirming a 50-year sentence imposed on a 38-year-old defendant under California's "three strikes" statute. Andrade stole videotapes from two separate stores, and the tapes were valued at $153. *Andrade*, 538 U.S. at 66. Because the thefts qualified as felonies, and because Andrade had been previously

convicted of three counts of first-degree residential burglary (which qualified as "serious or violent" felonies under California's three-strikes statute), each theft conviction "triggered a separate application of the three strikes law." *Id.* at 67-68. Andrade thus received two consecutive prison terms of 25 years to life. *Id.* at 68.

In upholding that sentence, he Court first explained that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle." *Andrade*, 538 U.S. at 73 (internal quote marks omitted). That "governing legal principle gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle." *Id.* at 76. In light of that principle, and in light of Andrade's current crime and prior convictions, the California Court of Appeal did not engage in "an unreasonable application of our clearly established law" by affirming the consecutive 25-year prison terms prescribed by the three-strikes statute. *Andrade*, 538 U.S. at 77.

*Andrade* supports a similar conclusion here: Oregon courts reasonably applied clearly established federal law by rejecting petitioner's Eighth Amendment argument. Petitioner's most recent offense—masturbating while sitting behind his victim, in a way that made her "frozen in fear"—is significantly more egregious than the videotape thefts that Andrade committed.

Moreover, the prior felonies that brought petitioner within Or. Rev. Stat. § 137.719's ambit—including his rape and sodomy of underage victims—were at least as serious as the residential burglaries that brought Andrade within the ambit of California's three-strikes law. Moreover, the severity of petitioner's true-life sentence is analogous to Andrade's two consecutive 25-years-to-life sentences. Although Andrade "retain[ed] the possibility of parole," *Andrade*, 538 U.S. at 74, it is not evident from the decision whether that the possibility of parole was at all likely to result in petitioner's release during his lifetime. (Pet. Br. 44). Oregon state courts reasonably could conclude, under Supreme Court case law, that petitioner's true-life sentence is constitutional.

Petitioner suggests that this case is analogous to *Gonzalez* and *Ramirez*, in which this court held that state courts unreasonably applied clearly established federal law by rejecting Eighth Amendment challenges to lengthy prison sentence. (Pet. Br. 46-48). Yet the crucial circumstances in those two cases are absent here. And in light of petitioner's decades-long history of victimizing others to satisfy his sexual impulses, petitioner cannot show that *all* fairminded jurists would view his sentence as unconstitutional.

First, this case is easily distinguished from *Ramirez*. Ramirez was sentenced under California's three-strikes law to "25 years to life in prison, with no eligibility for parole until he had served 25 years," for shoplifting a VCR

worth $199, even though his prior two "strikes" were "two nonviolent shoplifting offenses." *Ramirez*, 365 F.3d at 756. This court held that the California Court of Appeal unreasonably applied clearly established federal law by rejecting Ramirez's Eighth Amendment argument. *Id.* at 757. In concluding that the record "gives rise to an inference of gross disproportionality," this court emphasized 'the nonviolent nature of Ramirez's three crimes," "his minimal criminal history," and the fact that he had never been previously imprisoned—he had served just "six months in county jail" on a single occasion for his prior felonies. *Id.* at 775, 770.

Each of those factors provides a stark contrast to petitioner's case. Unlike Ramirez's most recent shoplifting crime, petitioner's most recent felony was a crime in which he victimized and frightened a young woman to gratify his own sexual desire. And unlike Ramirez's prior shoplifting felonies, petitioner's prior felonies were "sex crimes" that each victimized an identifiable person and included the rape and sodomy of minors. Finally, unlike Ramirez, petitioner had served multiple, and significant, prison terms before he committed the crime that triggered his recidivist sentence. His criminal history demonstrated that significant prison terms do not deter him from again victimizing others to satisfy his sexual impulses. Petitioner's case is easily distinguished from *Ramirez*.

Petitioner's case also differs significantly from *Gonzalez*, for the following two reasons: (1) petitioner's most recent felony crime is far more serious than the most recent felony that Gonzalez committed; and (2) because an unmistakable link exists between petitioner's prior felony sex crimes and his most recent felony sex crime, his true-life sentence is justifiable as a response to recidivism. The crime that triggered Gonzalez's recidivist sentence—28 years to life under California's three-strikes law—was "failing to update his annual sex offender registration within five working days of his birthday." *Gonzalez*, 551 F.3d at 877. California courts characterized that crime as a "regulatory offense" that "pose[s] no danger to society," and this court described the crime as "a crime of omission, which is by definition *the* most passive felony a person could commit." *Gonzalez*, 551 F.3d at 877, 890 (internal quote marks omitted; emphasis in original). In contrast, petitioner's most recent felony was anything but passive—instead, he purposely sat behind his victim and masturbated, doing so in a noticeable manner that prompted her to be "frozen in fear."

Although Gonzalez's prior felonies included "a lewd act with a child under 14" and "attempted rape by force," this court emphasized that his most recent crime—the passive failure to update his registration within five days of his birthday—could not be described as evidence that he was a recidivist who was once again committing the same types of felonies that he previously had

committed. *Id.* at 878. "Gonzalez's failure to update his sex offender registration is categorically different from his past criminal conduct and does not demonstrate any recidivist tendency toward violent crime or sex offenses." *Id.* at 891. As a result, the California Court of Appeal unreasonably applied the "gross disproportionality principle" by rejecting Gonzalez's Eighth Amendment challenge. *Id.*

In contrast, petitioner's most recent public indecency conviction reflects the same willingness to victimize others—and to do so in order to gratify his sexual impulses—that petitioner's prior felony sex crimes reflected. Unlike the most recent crime that Gonzalez committed, petitioner's most recent crime, when compared to the prior crimes that brought him within Or. Rev. Stat. § 137.719's ambit, demonstrated a "recidivist tendency."

Neither *Ramirez* nor *Gonzalez* shows that Oregon state courts unreasonably applied clearly established federal law as announced by Supreme Court holdings. Because fairminded jurists could view petitioner's sentence as constitutional under clearly established federal law, habeas relief is unavailable.

**II.    Nothing in pages 18-42 of petitioner's brief identifies a basis for reversal or relief under § 2254(d).**

The above arguments explain how pages 42-49 of petitioner's brief, which expressly invoke § 2254(d)(1)'s standards, identify no basis for relief or reversal.

Pages 18-42 of petitioner's brief also identify no basis for relief or reversal.  In pages 18-42, petitioner asserts that the state courts violated Eighth Amendment principles in a number of ways, and he makes those assertions in an effort to support his general assertion that a true-life sentence "for exposing genitals in public constitutes cruel and unusual punishment."  (Pet. Br. 18; capital letter and bold omitted).  But petitioner does not purport to identify a basis for relief under § 2254(d) in pages 18-42.  In other words, those pages do not purport to identify any "clearly established" federal rule that the state courts acted contrary to or unreasonably applied.  Only at pages 42-49 does petitioner purport to identify any clearly established rules that the state courts—in his view—acted contrary to or unreasonably applied.

At best, pages 18-42 present an argument that this court could entertain if this were *not* a federal habeas case, and if this court were instead being asked to directly assess whether a particular sentence—in light of this court's own jurisprudence, as well as the Supreme Court's—violated the Eighth

Amendment.  But because this *is* a federal habeas case, the argument at pages 18-42 identifies no basis for reversal or relief.

In any event, none of the purported Eighth Amendment principles that petitioner invokes at pages 18-42 reflects any "clearly established" rules found in Supreme Court holdings.  (*See, e.g.*, Pet. Br. 27, proposing a "categorical rule that would foreclose life without parole for misdemeanor offense conduct, even when recidivist enhancements turn that same conduct into a felony," but citing no Supreme Court holding to that effect); Pet. Br. 39, referring to "the Supreme Court's due process-based prohibition against permanently incarcerating the mentally ill," but citing no Supreme Court decision holding that a person with petitioner's particular criminal history and diagnoses may not constitutionally receive a true-life sentence; Pet. Br. 39, stating that the sentencing court's "reliance on uncharged and dismissed conduct" reflects constitutional concerns, but citing no Supreme Court decision holding that a sentencing court may not rely on uncharged or dismissed conduct when assessing whether a statutorily imposed sentence violates the Eighth Amendment); *see also Nichols*, 511 U.S. at 747 ("[s]entencing courts have not only taken into consideration a defendant's prior conviction, but have also considered a defendant's past criminal behavior, even if no conviction resulted from that behavior," and "[w]e have upheld the constitutionality of considering such previous conduct").

## CONCLUSION

This court should affirm the district court's judgment.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General
BENJAMIN GUTMAN
Solicitor General


/s/  Rolf C. Moan
_____
ROLF C. MOAN  #924077
Senior Assistant Attorney General
rolf.moan@doj.state.or.us

Attorneys for Respondent-Appellee
Dave Pedro

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7), Federal Rules of Appellate Procedure, I certify that the Appellee's Brief is proportionately spaced, has a typeface of 14 points or more and contains 8,612 words.

DATED: July 10, 2023

/s/ Rolf C. Moan
_____
ROLF C. MOAN  #924077
Senior Assistant Attorney General
rolf.moan@doj.state.or.us

Attorney for Respondent-Appellee
Dave Pedro

ELLEN F. ROSENBLUM
Attorney General
BENJAMIN GUTMAN
Solicitor General
ROLF C. MOAN
Senior Assistant Attorney General
1162 Court St.
Salem, Oregon 97301
Telephone: (503) 378-4402

Counsel for Appellee

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| TERRY EUGENE IVERSEN, | |
| Petitioner-Appellant, | U.S.C.A. No. 22-35076 |
| v. | |
| DAVE PEDRO, | STATEMENT OF RELATED CASES |
| Respondent-Appellee. | |

Pursuant to Rule 28-2.6, Circuit Rules of the United States Court of

Appeals for the Ninth Circuit, the undersigned, counsel of record for Appellee,

certifies that he has no knowledge of any related cases pending in this court.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General
BENJAMIN GUTMAN
Solicitor General

/s/  Rolf C. Moan
_____
ROLF C. MOAN  #924077
Senior Assistant Attorney General
rolf.moan@doj.state.or.us

Attorneys for Respondent-Appellee
Dave Pedro

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2023, I directed the Appellee's Brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Rolf C. Moan
_____
ROLF C. MOAN #924077
Senior Assistant Attorney General
rolf.moan@doj.state.or.us

Attorney for Respondent-Appellee
Dave Pedro

RCM:kw5/87007210